**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
CURT JEROME CIZEK,                )
                                                    )
                    Plaintiff,            )
                                                    )
          v.                                       )          Civil Action No. 23-0023 (ABJ)
                                                    )
DEPARTMENT OF DEFENSE, *et al.*,    )
                                                    )
                    Defendants.       )
_____)

## MEMORANDUM OPINION

 Plaintiff Curt Jerome Cizek, a former Air Force Chaplain, has brought this action against

the U.S. Department of Defense ("Department") and its Office of the Inspector General ("OIG")

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Compl. [Dkt. # 1]. He seeks an

unredacted copy of a January 13, 2021 Memorandum for Record (the "Memorandum") written by

an OIG Senior Investigator, that assessed a previous Report of Investigation into plaintiff's claims

that he had been the subject of reprisal for protected whistleblower communications. Compl. at 1;

*see also* Redacted DoD Inspector General Report, Ex. 1 to Compl. [Dkt. # 1-1] ("Redacted

Memo."). Plaintiff alleges that the four-page Memorandum "contains the OIG's findings about

specific incidents of retaliation that led to [his] failure of selection to the rank of Major and

subsequent involuntary separation from the Air Force in 2016[,]" and he objects to the fact that

portions of the document that was produced to him in response to a FOIA request were withheld.

Compl. at 1.

 Defendants have moved for summary judgment pursuant to Federal Rule of Civil

Procedure 56. *See* Defs.' Mot. for Summ. J. & Mem. in Supp. [Dkt. # 7] ("Defs.' Mot."). The

motion is supported by a declaration explaining the justification for the agency's invocation of

FOIA Exemptions 5, 6, and 7 to withhold the redacted material.  *See* Decl. of Mark Dorgan [Dkt. # 7-2] ("Dorgan Decl.").  Plaintiff has opposed defendants' motion and filed a cross-motion of his own.  *See* Pl.'s Mem. in Opp. to Defs.' Mot. [Dkt. # 8] ("Pl.'s Opp."); Pl.'s Cross-Mot. for Summ. J. & Mem. of P. & A. in Supp. [Dkt. # 9] ("Pl.'s Cross-Mot.").  The matter is fully briefed.  Reply in Supp. of Defs.' Mot. & Opp. to Pl.'s Cross-Mot. [Dkt. # 14] ("Defs.' Reply"); Pl.'s Reply in Supp. of Cross-Mot. [Dkt. # 16] ("Pl.'s Cross-Reply").  The defendants' reply in opposition to plaintiff's cross-motion is supported by a supplemental declaration, *see* Suppl. Decl. of Mark Dorgan [Dkt. # 14-2] ("Dorgan Suppl. Decl.") ¶ 2, as well as a *Vaughn* Index "repeating the information withheld along with the exemptions, and their bases, the DoD OIG has claimed." Defs.' *Vaughn* Index, Ex. A to Dorgan Suppl. Decl. [Dkt. # 14-2] ("*Vaughn* Index"). On September 20, 2024, the Court called for *in camera* review of the unredacted Memorandum. *See* Min. Order (Sept. 20, 2024).

For the reasons that follow, defendants' motion for summary judgment will be **GRANTED** in part and **DENIED** in part, and plaintiff's cross-motion for summary judgment will be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff was a Chaplain in the United States Air Force from February 28, 2007 until July 31, 2016, when he was involuntarily separated "after not being selected for promotion."  Redacted Memo. at 3; Pl.'s Statement of Material Facts [Dkt. # 9-1] ("Pl.'s SOF") ¶ 1; Defs.' Resp. to Pl.'s SOF [Dkt. # 14-1] ("Defs.' Resp. SOF") ¶ 1.  Plaintiff filed an Inspector General complaint alleging that the series of employment actions that led to his separation were in reprisal for whistleblowing on his part, and that resulted in a Report of Investigation (ROI) for Allegations of Reprisal – Captain Curt J. Cizek (ACTS FRNO 2014-22818/DCATS #20150107-029317) ("the

ROI") and a decision that plaintiff's claims were unsubstantiated.  Redacted Memo. at 3.  Plaintiff then sought reconsideration of that report, and John D. Vernon, a Special Investigator in the Whistleblower Reprisal Investigations Directorate ("WRI"), reviewed the ROI, interviewed the plaintiff, and reviewed other documentary evidence, measuring the ROI against the professional standards for investigators in federal offices of Inspectors General.  Redacted Memo. at 2; *see also* Decl. of John Vernon, Ex. A to Pl.'s Opp. [Dkt. # 8-1] ("Vernon Decl.") ¶ 2; and Pl.'s SOF ¶ 4; Defs.' Resp. SOF ¶ 4.  He prepared a Memorandum detailing his findings and conclusions, and in his words, he "found that there were obvious errors" in plaintiff's reprisal case, "that taken together, could have substantiated Mr. Cizek's military reprisal case."  Statement of John D. Vernon, Former Senior Investigator, Ex. 2 to Compl., [Dkt. # 1-2] at 1.  In the meantime, plaintiff has formally challenged his involuntary separation, and that case is currently pending before the Air Force Board of Correction of Military Records ("AFBCMR").  *See* Pl.'s SOF ¶ 2; Defs.' Resp. SOF ¶ 2.  The gravamen of plaintiff's complaint is that he is being placed in the impossible position of persuading the AFBCMR that his separation was the result of retaliation while being denied the benefit of the substance of Vernon's observations about the defects in the OIG's initial evaluation of those very reprisal claims.  *See* Compl. at 2.

The unredacted portion of the Memorandum attached as Exhibit 1 to the Complaint lays out the background of the investigation at issue:

> This case originated at Joint Base San Antonio – Lackland (JBSA-Lackland), Texas, in the November / December 2012 timeframe where the Complainant was assigned as a Chaplain, Basic Military Training (BMT) Squadron, 502nd Air Base Wing.  In April 2013, while assigned to BMT, the Complainant reported what he reasonably believed was an ethics/integrity violation to multiple members of his chain of command involving the reading of trainee end-of-course surveys in violation of the Air Force "Little Blue Book," on core values dated January 1, 1997.
> On May 31, 2013, the Complainant was removed from his BMT position, reassigned to the Installation Chaplain's office and on June 21, 2013, issued

a letter of counseling (LOC) regarding his removal from BMT.  From June 2013 to Jan 2014, the Complainant was deployed in support of on-going combat operations.  While deployed in theater, the Complainant filed an IG complaint alleging that he was removed from his BMT position, received a LOC and received a weak OPR (Aug 2013), for reporting ethics/integrity violations to members of his chain of command.  Later, the Air Force Education and Training Command IG determined that the Complainant's removal from his BMT position and LOC were not personnel actions and that his August 2013 OPR was issued before he made protected communications. However, ACTS FRNO 2014-22818 ROI did annotate that that [sic] the Complainant's "LOC is considered a UPA [unfavorable personnel action] because it was placed in the PIF [personnel information file] and the contents of a PIF are to be considered by raters when preparing performance evaluations IAW [in accordance with] AFI 36-2404, Officer and Enlisted Evaluation Systems." On March 26, 2014, the Complainant received a second LOC for "failure to properly utilize [the] chain of command" and later on June 18, 2014, he received his officer performance report for June 16, 2013, through May 27, 2014, and his promotion recommendation which the Complainant stated was unfavorable and in reprisal for his protected communications.

The Complainant was separated from the Air Force on [sic] after his assignment at Shaw AFB after not being selection for promotion.  WRI conducted an oversight review of this ROI and approved its findings as not substantiated on August 2, 2016.

Redacted Memo. at 2-3.  On March 11, 2021, plaintiff submitted a FOIA request to the Department of Defense OIG seeking an unredacted copy of the Memorandum.  Decl. of Curt Jerome Cizek, Ex. B to Pl.'s Opp. [Dkt. # 8-2] ("Cizek Decl.") ¶ 6.  According to the defendants' declarant, the Memorandum contains "a review of the Air Force's Investigative Plan, their Report of Investigation (ROI), and the subject interviews the Air Force conducted."  Dorgan Decl. ¶ 34.  The Memorandum was "generated by and wholly internal to the Inspector General."  Dorgan Decl. ¶ 31.

On April 12, 2021, the OIG responded to plaintiff's request by transmitting a four-page redacted version of the Memorandum.  *See* April 12, 2021 FOIA Response, Ex. D to Dorgan Decl. [Dkt. # 7-2] ("FOIA Response").  The OIG redacted information pursuant to FOIA Exemption 5

under 5 U.S.C. § 552(b)(5), FOIA Exemption 6 under 5 U.S.C. § 552(b)(6), and FOIA Exemption 7 under 5 U.S.C. § 552(b)(7)(C). *See* FOIA Response at 1. On April 13, 2021, plaintiff appealed the decision to redact portions of the Memorandum. *See* Dorgan Decl. ¶ 20; Pl.'s Administrative Appeal, Ex. E to Dorgan Decl. [Dkt. # 7-2]. On June 10, 2021, the OIG's FOIA Office granted the appeal in part "by releasing some additional information," which it provided as an attachment to the email transmitting the appeal decision. *See* Dorgan Decl. ¶ 23; OIG FOIA Office Appeal Decision, Ex. H to Dorgan Decl. [Dkt. # 7-2] ("Appeal Decision Letter"). It also affirmed the initial decision to withhold the remaining information within the pages pursuant to Exemption 5 "because the withheld information contains inter- or intra- agency communications as well as opinions, recommendations, and analysis protected by the deliberative process privilege," and pursuant to Exemptions 6 and 7(c), because the withheld information was collected for law enforcement purposes and "contains information that, if released, would constitute a clearly unwarranted invasion of personal privacy." Appeal Decision Letter at 1.

On July 26, 2021, the Office of Government Information Services ("OGIS") emailed the OIG FOIA Office stating that plaintiff contacted the OGIS to request an unredacted copy of the relevant record. Dorgan Decl. ¶ 24; OIG FOIA Email, Ex. I to Dorgan Decl. [Dkt. # 7-2]. On July 28, 2021, the OIG FOIA Office responded to OGIS, stating that it had already provided "all releasable information" to plaintiff. Dorgan Decl. ¶ 25; OIG FOIA Email, Ex. I to Dorgan Decl. [Dkt. # 7-2]. On January 4, 2023, plaintiff filed this lawsuit in connection with his FOIA request. *See* Compl.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable factfinder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id*. at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

When the Court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 247.

FOIA cases are typically and appropriately decided on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Rep.,* 641 F.3d 521, 527 (D.C. Cir. 2011).  In FOIA cases, the agency bears the ultimate burden of proof.  *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989).  The Court may award summary judgment based solely on information provided in an agency's affidavits or declarations that identify "the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

When considering a motion for summary judgment under FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The Court may call for *in camera* inspection of the documents that have been withheld order to assist it in making a responsible *de novo* determination. *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978). The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630 (1982). This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003). When an agency withholds documents or parts of

documents, it must explain what it is withholding and the statutory exemptions that apply. *See Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973).

When summary judgment turns upon the applicability of an exemption, the Court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt[ed] from disclosure." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citations and international quotation marks omitted). Moreover, pursuant to a 2016 amendment to the FOIA statute, an agency may withhold information pursuant to an exemption only if it "reasonably foresees that disclosure would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). This reasonable foreseeability of harm standard requires the withholding agency to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019).

## I.    The Memorandum falls within FOIA Exemption 5.

Defendant redacted information in this case pursuant to FOIA Exemption 5, which bars disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). A document may be properly withheld under Exemption 5 if it satisfies "two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), quoting *Tax'n With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981) (Exemption 5 encompasses "the

protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "the executive 'deliberative process privilege.'").

Here, the agency invoked the deliberative process privilege, Defs.' Mot. at 3, which has been found to be incorporated in Exemption 5. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).

The deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case (Espy),* 121 F.3d 729, 737 (D.C. Cir. 1997) (citations and internal quotation marks omitted). The Supreme Court explained that it "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).

To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc.*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 866. In other words, a "'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Formaldehyde Inst.*, 889 F.2d at 1122, quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

> The agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process. . . .  [I]f documents are not a part of a clear "process" leading to a final decision on the issue . . . they are less likely to be properly characterized as predecisional[.]

*Coastal States*, 617 F.2d at 868, citing *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975).[1]

With respect to the "deliberative" prong of the test – the second prong – "the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 66 (D.C. Cir. 1974).  But the agency "cannot simply rely on 'generalized' assertions that disclosure 'could' chill deliberations."  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (citation omitted).

As the D.C. Circuit explained in the *Espy* case:

> Both requirements stem from the privilege's "ultimate purpose[, which] . . . is to prevent injury to the quality of agency decisions" by allowing government officials freedom to debate alternative approaches in private. The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.

*Espy*, 121 F.3d at 737 (citations omitted).

Defendant invoked the deliberative process privilege with respect to "sections 5 through 8 [of the Memorandum, which] contain the investigator's personal analysis, opinions, and review of the Air Force's Investigative Plan, their Report of Investigation (ROI), and the subject interviews

---

1  *See also Coastal States*, 617 F.2d at 868 ("Characterizing [] documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word.  No 'decision' is being made or 'policy' being considered[.] . . .").

the Air Force conducted." Dorgan Decl. ¶ 34.  Plaintiff maintains that the redacted information in the Memorandum is factual, not "deliberative," and therefore not protected by the deliberative process privilege.  Pl.'s Cross-Mot. at 14–15; Pl.'s Cross-Reply at 18–20.  He also contends that "the redacted OIG reprisal investigation [Memorandum] conceals official government misconduct," and the deliberative process privilege is therefore inapplicable in light of the "government misconduct exception."  Pl.'s Cross-Mot. at 10-12; Pl.'s Cross-Reply at 12–15.[2]

---

2      Plaintiff submits that the redaction of the Memorandum conceals the fact that "his involuntary separation from the Air Force was the result of religious prejudice and a series of retaliatory incidents that various Inspectors General investigations failed to address," and that "vitiate[s] any 'deliberative process' privilege' . . . ."  Pl.'s Cross-Mot. at 10-11.  He points to Vernon's declaration, in which the investigator avers that the unredacted version of the Memorandum "points to possible wrongdoing, possible misconduct, and possible failure to follow statutory duties by personnel reviewing Chaplain Cizek's case."  Vernon Decl. ¶ 13 (he does not address religious prejudice).

Plaintiff cites *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), a case concerning the enforcement of a grand jury subpoena issued to the White House counsel's office, in which the D.C. Circuit observed that the deliberative process privilege "can be overcome by a sufficient showing of need." *Id.* at 737.  It noted as an example that "where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'"  *Id.* at 738, quoting *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995).  (*continued on next page*)

**A.  The information withheld is protected by the deliberative process privilege because it was predecisional and deliberative.**

According to the agency's declarant, the information withheld in these sections is

"predecisional" because "it contains an investigator's recommendations and opinion regarding a

---

But *In re Sealed Case* arose in the context of a criminal investigation, and the Court of Appeals has not yet resolved whether the government misconduct exception applies in the FOIA context.  *See Prot. Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 889 n.3 (D.C. Cir. 2021) ("in light of [the court's] statement in *In re Sealed Case* that FOIA requests cannot overcome the deliberative process privilege . . . the court need not resolve that issue here."); *see also Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 113 (D.D.C. 2021) ("The D.C. Circuit recently acknowledged that no binding precedent recognizes a government-misconduct exception in FOIA cases.").  Some courts in this district have discussed the possibility that the exception could apply in cases of  severe enough misconduct that qualifies as "nefarious" or "extreme" wrongdoing, but then declined to apply it or reach the question. *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Housing & Urban Dev.*, 19 F.Supp.3d 1, 14 (D.D.C. 2013); *see also Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F.Supp.2d 59, 66, 68–69 (D.D.C. 2012); *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F.Supp.2d 130, 133–34 (D.D.C. 2008).

On the other hand, this Court and other courts in this district have found the exception inapplicable in the FOIA context.  *See Prot. Democracy Project, Inc.*, 10 F.4th at 889 n.3, citing *Judicial Watch, Inc. v. Dep't of State*, 241 F. Supp. 3d 174, 182-83 (D.D.C. 2017), and *Ctr. for Pub. Integrity v. Dep't of Def.*, 486 F. Supp. 3d 317, 331-32 (D.D.C. 2020); *see also Wright v. Admin. for Child. & Fams.*, Civ. A. No. 15-0218, 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016).  In *Wright*, the court explained: "[t]his reading of *In re Sealed Case* is in accordance with an understanding of the FOIA well-established in this Circuit: Exemption 5's protection of privileged materials is not subject to the same exceptions to which the common law privilege is susceptible."  *Id.*  In this Court's view, the *Wright* decision flows directly from the ruling in *In re Sealed Case*, where the Court of Appeals specifically carved FOIA cases out of its general recognition that the deliberative process privilege could be overcome by a showing of need.  *See In re Sealed Case*, 121 F.3d at 737 n.5; *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 1480 (1989) ("[W]hether [disclosure] is *warranted* cannot turn on the purposes for which the request for information is made.") (emphasis in original).  Moreover, it is notable that when the Court of Appeals recently declined to address the issue, it reiterated its holding in *In re Sealed Case* "that FOIA requests cannot overcome the deliberative process privilege."  *Prot. Democracy Project, Inc.*, 10 F.4th at 889 n.3.

In the absence of further direction from Congress or the Circuit, this Court remains disinclined to write an exception into the statutory exemption.  In any event, it is not necessary to the resolution of this case to do so, since the agency's showing fails to satisfy its obligations under FOIA for other reasons.

request for reconsideration[;]" "the investigator himself lacked decisional authority[;]"  and the "recommendations and opinions precede [the Whistleblower Reprisal Investigation] leadership's final determination regarding plaintiff's request."  Dorgan Decl. ¶ 33.  The redacted information "was generated as part of a continuous process of agency decision making leading up to a final decision," and contained "the investigator's personal analysis, opinions, and review of the Air Force's Investigative Plan, their Report of Investigation (ROI), and the subject interviews the Air Force conducted."  Dorgan Decl. ¶¶ 33-34.  The investigator provided this analysis to leadership so that they could make "an informed, final determination as to plaintiff's request" and "perform their oversight duties . . . ."  Dorgan Decl. ¶ 34.

The Court finds that the information withheld in sections five through eight falls within the scope of the deliberative process privilege.  The content of the Memorandum is clearly predecisional, as the Memorandum was generated before a decision was made on plaintiff's request for reconsideration of the ROI, and it conveyed findings and recommendations to WRI management, the group responsible for making a final determination.  *See* Dorgan Decl. ¶ 27 (stating that the "[M]emorandum serves as the investigator's opinion and recommendation to WRI leadership as to whether they should consider reopening plaintiff's case regarding his allegations of reprisal").

The information withheld in these sections also satisfies the deliberative prong because the agency's declarant has shown, and that analysis was supported by *in camera* review, that the Memorandum was generated as part of an internal decision-making process,  and that the redacted material is not purely factual, but "recommendatory in nature," offering "the personal opinions of the [investigator]" regarding how leadership should make a final decision with respect to plaintiff's request.  *See Coastal States,* 617 F. 2d at 866 ("[T]he [d]eliberative [p]rocess privilege . . . serves

to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism . . . .").

So the Court finds that the deliberative process privilege applies in this case, but the inquiry does not end there.

**B. The agency has failed to make the necessary showing of harm.**

In 2016, Congress added language to the Freedom of Information Act to mandate that "an agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by the exemption or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i).   As the D.C. Circuit has explained, "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'"   *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021), quoting H.R. Rep. No. 391, at 9.   "In that way, the foreseeable harm requirement imposes an independent and meaningful burden on agencies."   *Id.* (brackets and internal quotation marks omitted).

Moreover, in the *Reporters Committee* opinion*, the Court of Appeals issued a clear instruction that this requirement must be enforced with rigor:  the government cannot rely on a "perfunctory statement that disclosure . . . would jeopardize the free exchange of information." 3 F.4th at 370 (brackets and internal quotation marks omitted), citing *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018).   It must provide the Court with "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations

going forward." *Id.*; *see also Judicial Watch, Inc. v. DOJ*, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019) (explaining that the reasonably foreseeable harm standard requires the withholding agency to "connect[] the harms . . . to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how in particular they would be harmed by disclosure" of the contested records.).

Indeed, in the *Reporters Committee* case, the court was addressing the application of section 8(A) to the very exemption that is at issue in this case. "In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reporters Comm.*, 3 F.4th at 369–70.

Here, the agency's declarant addressed this requirement as follows:

> In each instance where information was withheld from plaintiff pursuant to Exemption 5, only that information which is protected by the deliberative process privilege was withheld, and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision.

Dorgan Decl. ¶ 37.  This perfunctory parroting of the statutory language falls far short of the necessary showing.

While the memorandum in support of the motion for summary judgment does not address the amendment directly, in the section arguing that redactions are appropriate under the deliberative process privilege, the defendants assert, "[r]elease of this information would severely hamper the day-to-day-work of the Inspector General's investigators as they would no longer feel free to discuss their ideas, strategies, and recommendations in necessary memorandum, which would impair the agency's ability to foster the forthright internal discussions necessary for efficient and proper decision-making."  *See* Def.'s Mot. at 6.  This suggestion is worthy of the criticism

voiced in *Reporters Committee* that "the assertion of harm . . . is wholly generalized and conclusory . . . ." 3 F.4th at 370.

There is nothing in the record of this particular case to support a finding that release of the observations section of the Memorandum would chill OIG investigators from being candid in their analyses and recommendations in the future.  To the contrary, since it is already publicly known from the investigator himself that his recommendation fell on deaf ears, the withholding of the detailed reasoning that formed the basis for that recommendation might have more of a chilling effect on future investigations than the release of the information would.

In sum, the onus is on the agency to explain, with particularity, why disclosure would "actually impede" future deliberations.  *Reporters Comm.*, 3 F.4th at 370.  Because the agency has not done so, it must produce the redacted portions of sections 5, 6, 7, and 8 of the Memorandum, except to the extent that names and personally identifying information of witnesses were withheld under Exemptions 6 and 7(C), which will be addressed below.

## II.    The limited withholding of identifying information was justified under FOIA Exemption 7(C).

The agency has also withheld information contained in responsive records on personal privacy grounds pursuant to FOIA Exemptions 7(C) and 6.  Exemption 7(C) applies to "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  For records to fall within this exemption, the agency must first demonstrate that the documents were compiled for law enforcement purposes.  *Id.*; *see Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 342 (D.C. Cir. 1987) (holding that information compiled for a federally authorized law enforcement purpose falls under the exemption).

Exemption 6 applies to "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of Exemption 6 is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982).  "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 . . . ."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989).  Therefore, "[i]f the information withheld here was compiled for law enforcement purposes, thus implicating Exemption 7(C), then [the Court] would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."  *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quotations omitted); *see also People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Hum. Servs.*, 745 F.3d 535, 541 (D.C. Cir. 2014) (confining analysis to Exemption 7(c) when agency justified its FOIA responses under both Exemptions 6 and 7(c)).

In applying FOIA Exemption 7(c), courts must balance the privacy concerns and the public interest in determining whether the exemption applies.  *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).  "[E]even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

To determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy, courts employ a two-step test.  First, a court should ask "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest?"  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (citation and internal quotation marks omitted), quoting *Horner*, 879 F.2d at 874.  If so, the court must next "weigh that interest against

the public interest in the release of the records in order to determine whether, on balance, disclosure would [cause] a clearly unwarranted invasion of personal privacy." *Id.* (internal quotation marks omitted). "[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016) (internal quotation marks omitted), quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994).

Defendant invoked Exemptions 6 and 7(c) to withhold "third parties' names, particular testimony, and identifying personal knowledge of plaintiff" in sections 7 and 8 of the Memorandum. Dorgan Decl. ¶ 46; *Vaughn* Index at 4-6; Redacted Memo. at 3-5.[3] According to the agency's declarant, the redacted portions contain "the names of DoD military personnel at or below the rank of colonel (COL) who provided testimony in [the] OIG investigation." Dorgan Decl. ¶¶ 38, 46; *Vaughn* Index at 4-6. Because the withheld information was "compiled in conjunction with [the DoD OIG's] performance of its audit and investigative functions," Dorgan Decl. ¶ 49, defendant maintains that they were "complied for law enforcement purposes and disclosure could reasonably be expected to constitute an unwarranted invasion of personal

---

3       Pursuant to Exemptions 6 and 7(c), defendant also initially withheld the DoD investigator's name, direct phone number, and digital signature in section 9 of the Memorandum. *See* Dorgan Decl. ¶ 45; Redacted Memo. at 5. However, in response to Mr. Vernon's request in his declaration that the Memorandum be unredacted, Vernon Decl. ¶ 14, defendant removed the redactions in section 9 pertaining to Mr. Vernon's name, email-address, and digital signature and attached an amended version of the Memorandum to Mr. Drogan's supplemental declaration. *See* Ex. C to Dorgan Suppl. Decl. at 4; Dorgan Suppl. Decl. at ¶ 13.

privacy," *Vaughn* Index at 4–6, and that it is "reasonably foreseeable that disclosure of this information would harm the interests protected" by FOIA.  Dorgan Decl. ¶ 54.

Under Exemption 7(C), the threshold question is whether records were compiled for "law enforcement purposes."  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  *Mittleman v. Office of Personnel Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996).  As the D.C. Circuit has explained:

> In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding. . . [T]he purpose of the investigatory files is the critical factor.

*Jefferson v. Dep't of Just., Off. of Pro. Resp.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotation marks omitted).  Here, Vernon was serving as a Senior Investigator at the Whistleblower Reprisal Investigations Directorate at the OIG and prepared the Memorandum based on his review of the OIG's investigation.  Pl.'s SOF ¶ 4; Defs.' Resp. SOF ¶ 4.  Because defendant withheld personal information from an OIG Memorandum that was "compiled in conjunction with its performance of its audit and investigative functions," Dorgan Decl. ¶ 49, the Court agrees that the Memorandum was compiled for law enforcement purposes under Exception 7(c).  The OIG was not performing general "surveillance or oversight of the performance of duties of its employees," but rather conducting "an inquiry as to an identifiable possible violation of law," i.e., retaliation against a whistleblower.  *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974).

Having found that the record at issue was compiled for law enforcement purposes, the Court must next "balance the privacy interests that would be compromised by disclosure against

the public interest in release of the requested information." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). According to the agency declarant, defendant determined that the privacy interests of the third parties who provided testimony in the investigation (as opposed to the Senior Investigator) are "substantial," and that releasing their identities and any identifying information "could subject them to harassment or embarrassment, as well as undue public attention." Dorgan Decl. ¶ 52. Plaintiff responds that there is a cognizable public interest in "knowing DoD violated [plaintiff's] First Amendment rights and it covered [it] up." Pl.'s Cross-Reply at 22.

Even if the disclosure of the Memorandum in its entirety would serve this public interest, this interest does not require revealing the names or other specific pieces of information – such as duty assignments at a particular time – that would serve to reveal the identities of DoD military personnel at or below the rank of colonel who provided testimony in this case. It is well-established that lower-level government employees in general have a privacy interest in their identities. *See Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996) ("[W]hile it is true that Government officials may have a somewhat diminished privacy interest they do not surrender all rights to personal privacy when they accept a public appointment.'") (internal citation, brackets, and quotation marks omitted). And it is generally accepted in this circuit that the public interest in the identities of low-level employees does not usually outweigh the individuals' privacy rights, as they are not typically decision-makers such that disclosure of their names would shed light on "what the government does." *See, e.g.*, *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 118 (D.D.C. 2005) (upholding the government's withholdings because "the public interest in learning the names of . . . lower-echelon employees is small" and plaintiff did not demonstrate how knowledge of the names would help it "understand how the agency performs its statutory duties"). As the agency's declarant maintains, the "release of personal details would not

add to the public's understanding of how the DoD OIG or the Air Force operates or how well the DoD OIG performs its statutory duties."  Dorgan Decl. ¶ 53.

Under these circumstances, the Court finds that the plaintiff has not identified a public interest that outweighs the privacy interests supporting the limited redactions of personally identifying information in this case.  Because revealing the personally identifying information in this record related to a law enforcement purpose is not necessary to advance the public interest, the Court finds that the Memorandum was properly redacted pursuant to Exemption 7(c).

## CONCLUSION

For all of these reasons, defendants' motion for summary judgment [Dkt. # 7] will be **GRANTED** in part and **DENIED** in part, and plaintiff's cross-motion for summary judgment [Dkt. # 9] will be **GRANTED** in part and **DENIED** in part.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE:  September 27, 2024